## GALVESTON, H. & S. A. RY. CO. v. LICATA. (No. 1690.)*

(Court of Civil Appeals of Texas. El Paso. Jan. 22, 1925. Rehearing Denied Feb. 19, 1925.)

1. Carriers ⬠132—Proof that damage to interstate shipment resulted from inherent infirmities of goods casts burden on shipper to prove it result of carrier's negligence.

Under Carmack Amendment (U. S. Comp. St. §§ 8604a, 8604aa), proof that loss or damage to interstate shipment resulted from inherent infirmities of goods, under circumstances not showing carrier's negligence, casts burden on shipper to prove that it resulted from carrier's negligence.

2. Carriers ⬠134—Finding that melons, when received for shipment, were in good condition, held sustained by evidence.

Evidence held to sustain finding that melons when received by carrier were in good condition for shipment to destination with proper refrigeration.

3. Carriers ⬠132—Carrier's evidence held insufficient to cast burden on shipper to prove that damage resulted from carrier's negligence.

Evidence held not to show that damage to interstate shipment of melons resulted from character of shipment itself or inherent infirmities of melons, under circumstances not showing carrier's negligence, so as to cast burden on shipper to prove that damage resulted from carrier's negligence.

⬠For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted April 15, 1925.

**4. Carriers ⟵⟶187—Instruction held not erroneous as requiring connecting carrier to ice car from point of origin of cantaloupes.**

Instruction to find for shipper, if defendant connecting carrier failed to properly ice car containing cantaloupes while "en route," *held* not erroneous as telling jury that it was carrier's duty to ice car from point of origin of cantaloupes before arrival and acceptance for transportation at connecting point.

**5. Appeal and error ⟵⟶232(3)—Objection not made to charges in trial court waived.**

Objections not made to charges in trial court are waived.

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Action by A. T. Licata against the Galveston, Harrisburg & San Antonio Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Kemp & Nagle, of El Paso, for appellant.
Nealon, Hudspeth & McGill, of El Paso, for appellee.

WALTHALL, J. This suit was brought by appellee, A. T. Licata, against the appellant, Galveston, Harrisburg & San Antonio Railway Company, to recover damages alleged to have been sutained by him on account of negligence on the part of appellant in the shipment of a carload of cantaloupes from El Paso, Tex., to New Orleans, La.

The shipment involved originated at Morada, state of Nayarit, Mexico, on April 21, 1922, and was shipped under Southern Pacific Company bill of lading of date April 26th, Nogales, Ariz., consigned to Ramon J. Menchaca, advise Schuster Bros., El Paso, Tex. The shipment, after inspection at Nogales, Ariz., arrived at El Paso, Tex., on the 29th of April, 1922, where it was again inspected, at which time and place appellee became the owner of the cantaloupes by purchase from Menchaca, and received the bill of lading therefor. On that date appellee directed appellant to ship the carload of cantaloupes then in its possession with standard refrigeration to Fort Worth, Tex., notify W. W. Shipmen, appellee agreeing to pay customary freight and standard refrigeration charges. Appellant accepted the shipment and proceeded to transport same as then directed. It is alleged that on the 1st day of May, 1922, appellee, by written order, directed the shipment be diverted from Fort Worth to John Meyer, Inc., New Orleans, La. At the time the direction was given to divert the shipment from Fort Worth to New Orleans it was alleged appellant had sufficient time to have so diverted the shipment before and after it reached San Antonio en route, but that the shipment was not diverted at San Antonio or at points along its line, as directed, but was moved to Fort Worth, and was later diverted by appellant to New Orleans. Appellee assigned negligence on the part of appellant in failing to divert the shipment as above. Appellee was not notified that the shipment was not diverted, as directed, and appellee assigned such failure as negligence. The shipment reached Fort Worth and was permitted to remain there unclaimed from 7 p. m. of May 2d until 4:15 a. m. of May 4th, when it was forwarded by appellant to New Orleans, arriving there at 12:35 p. m. on Sunday, May 7th. John Meyer, Inc., was not notified of the arrival of the shipment at New Orleans until 8 a. m. Monday, May 8th, and was then unable to get possession of the car containing the melons in time to make sale of them on the market of that day. It was alleged that by reason of the facts stated the melons when received were over ripe, decayed at the stem, and damaged.

The appellee also charged that the appellant failed to properly ice the car containing the cantaloupes at re-icing stations en route as required for standard refrigeration as prescribed by the perishable products tariff.

Appellee alleged that, subsequent to his routing the shipment to Fort Worth and prior to his rerouting the shipment to New Orleans, he had contracted a sale of the cantaloupes to John Meyer, Inc., at New Orleans, for the total sum of $2,743.50, conditioned upon their arrival at New Orleans in a merchantable condition. The shipment not having reached John Meyer, Inc., in a merchantable condition, he refused to consummate the purchase.

Appellant answered by general demurrer; special exception to the effect that the prayer for damages did not set forth a correct measure of damage; general denial; plea of negligence and contributory negligence on the part of appellee; a plea that if the melons arrived in an unmerchantable condition same was due to natural deterioration as a result of time during which the cantaloupes had been off the vines, and due to the condition of the cantaloupes at the time they were picked and crated.

The case was tried to a jury and submitted on general issues, and certain special charges requested by appellant and appellee.

The jury returned a verdict in favor of appellee for $1,326 upon which judgment was entered for appellee.

### Opinion.

In paragraph 8 of the court's general charge the jury was instructed as follows:

"If you find that the cantaloupes complained of could not by use of ordinary care on the part of the carriers and the condition which surrounded the shipment have been carried to New Orleans from the place they were grown with less deterioration than they suf-

fered by the shipment complained of, you will find for the defendant."

The court allowed the following special charge submitted by appellee, over objection of appellant:

"You are instructed in connection with paragraph 8 of the court's main or general charge that the burden of proof is upon the defendant to show that by the use of ordinary care on the part of the carriers and the conditions which surrounded the shipment the cantaloupes could not have been carried to New Orleans from the place that they were grown with less deterioration than that suffered by the shipment complained of."

By several propositions appellant complains of the above special charge as improperly placing the burden of proof upon appellant to show that it was not negligent in transporting the cantaloupes to New Orleans from the place they were grown, with less deterioration than that suffered, and insists that the true rule of law is that the burden of proof is upon the appellee (plaintiff below) to show negligence on the part of the carrier, where the carrier has shown that the damage occurred from an inherent infirmity in the merchandise shipped, or of the goods transported under circumstances not showing negligence.

[1] The shipment was interstate and by the Act of Congress of June 29, 1906 (34 Stat. at L. 584, c. 3591; U. S. Comp. St. §§ 8604a, 8604aa), and known as the Carmack Amendment, Congress assumed control over the subject-matter of all loss and damage to interstate shipments. Appellant correctly states the rule, we think, as announced by the Supreme Court of the United States in interstate shipment, that is that, when it has been shown that loss or damage to the shipment results from inherent infirmity of the goods shipped under circumstances not showing negligence on the part of the carrier, the burden of proving that the loss or damage to the goods shipped resulted from negligence of the carrier devolved upon the shipper. Cleburn P. & P. Co. v. Missouri, K. & T. Ry. Co. (Tex. Com. App.) 221 S. W. 270.

The first question presented is, Are the facts and circumstances attending the shipment of the cantaloupes such as to make applicable the rule above stated?

It is made to appear without question that the shipment of the cantaloupes originated at Morada, state of Nayarit, Mexico, on April 21, 1922, and was shipped under Southern Pacific Company bill of lading of date April 26, 1922, in lieu of original bill of lading, Nogales, Ariz., consigned to Ramon J. Menchaca, advise Schuster Bros., El Paso, Tex, destination El Paso, Tex., standard refrigeration guaranteed. All conditions under which the shipment was made are omitted from the record except section 1, which recites, in part, that the carrier or party in possession of the property described shall be liable for any loss thereof or damage thereto, except as therein provided. The exceptions are such as are found in such bills of lading, and none of them seem to have application under the facts shown. The section further recites, "except in case of negligence of the carrier or party in possession (and the burden to prove freedom from such negligence shall be on the carrier or party in possession), the carrier or party in possession shall not be liable for loss, damage or delay * * * resulting from a defect or vice in the property. * * * When in accordance with general custom, on account of the nature of the property, * * * the carrier or party in possession * * * shall be liable only for negligence, and the burden to prove freedom from negligence shall be on the carrier or party in possession."

[2] Appellant offered evidence to the effect that the records of the station at Morada show that on April 21, 1922, 360 crates of melons were shipped to Nogales, Ariz.; that after the car was loaded witness inspected two or three of the crates; upon the departure of the car, the records of inspection of the melons show that 30 per cent. of the melons were ripening; that the melons were picked more or less 40 kilometers, about one days' travel, from Morada, three or four days before loading; they were hauled to Morada from the place where picked from the vine in two-wheeled carts drawn by mules.

Without quoting the evidence at length appellant offered other evidence, the witness' answers being stated hypothetically and based upon the above as facts, to the effect that the melons were not in good condition for shipping on their arrival at El Paso.

Appellee and other witnesses testified that they made a thorough examination and inspection of the car of melons when the car reached El Paso, on the morning of the 29th of May, and found the melons in good, firm, merchantable condition, and carrying quality, and that the melons would have arrived in good condition in New Orleans, if transported in three or four days, with refrigeration and icing usual for shipments of that length. We think the evidence sufficient to sustain the finding that the melons were at El Paso on the 29th of May, were in good shipping condition for New Orleans, with proper refrigeration.

[3] Appellee purchased the car of cantaloupes at El Paso, after inspection as above, on May 29th, and diverted the shipment under the original Southern Pacific Company's bill of lading, to Fort Worth. The evidence, we think, is sufficient to justify the submission of the issue submitted to the jury of the further diversion by appellee of the shipment to New Orleans, and in time for the shipment to have been so diverted, and the failure of appellant to di-

vert the shipment as directed. It is not claimed by appellant that appellee was notified that the shipment was not diverted to New Orleans, but the claim is made that its records do not show a direction to divert the shipment to New Orleans after leaving El Paso and before it was moved to Fort Worth. The shipment was moved to Fort Worth and there remained without a claimant from 7 p. m. May 2d, until 4:45 a. m. May 4th, when it was forwarded by appellant to New Orleans, arriving there at 12:35 p. m. on Sunday, May 7th, and delivered to John Meyer, Inc., the next day.

A witness inspected the melons at Fort Worth on May 3d, and testified that he found the melons about 50 per cent. ripe and soft, but noticed no decay in the melons. The witness further testified that, if the melons were in good sound condition at El Paso on April 29th, the condition in which he found them when inspected indicated to him that they had not had proper refrigeration en route.

The melons when they arrived in New Orleans were soft, over ripe, and not in good merchantable condition. .Because of the condition of the melons in which they arrived at New Orleans, John Meyer, Inc., refused to buy them at the agreed sum of $2,743.50, and the total best sum obtainable, and for which the melons were sold, was $940.

We have concluded that it was not sufficiently made to appear, as a fact, that the loss and damage to the melons resulted from the character of the shipment itself, or from any inherent infirmity of the melons transported under circumstances not showing negligence of the appellant so as to make applicable the rule contended for by appellant.

[4] The court gave the following charge:

"If you find that the plaintiff was the owner of the cantaloupes, described by him, and that while en route the carrier failed to properly ice the car in which they were, and that the carrier was negligent in failing to ice the car, if it did, and that the value of the cantaloupes at New Orleans was thereby diminished, you will find for the plaintiff, unless you find for the defendant under some other charge given you."

The points of objection to the above charge and the charge in paragraph 8 copied above are that the charges instructed the jury that it was appellant's duty to ice the car from the point of origin of the cantaloupes, that of Mexico, to New Orleans. We think such construction could not reasonably be given either of the charges. Appellee had not complained of any failure of appellant or any one else to ice the car prior to its arrival and acceptance at El Paso by appellant, for transportation. Appellee had shown that he was not the owner of the melons before their arrival in El Paso. Also had pleaded and testified to the agreement of appellant, and its duty under perishable products tariff to re-ice the car at stations on its line. Appellant, by pleading and proof, had shown the origin of the melons for the purpose of showing the inherent infirmity of the melons at the time of their arrival in El Paso. To us it seems that it would be an unreasonable construction of the words "en route" to say they applied to the shipment, prior to its arrival at El Paso, and acceptance by appellant for transportation beyond the original terminal point. In paragraph 8 it will be seen the instruction had reference to appellant's affirmative plea, the condition of the cantaloupes for the shipment, and not to icing, entirely different issues.

[5] It is insisted that, the evidence showing that the shipment left Mexico on the Southern Pacific Company bill of lading and was transported to El Paso, and diverted out of. El Paso to Fort Worth under the original bill of lading, and from thence to New Orleans over lines of railroad other than those of appellant, there being in the record no other bill of lading issued, the appellant was not the initial carrier, but was an intermediate or connecting carrier, and, the shipment being interstate, the appellant would be responsible only for negligence on its own line, and that the two charges complained of improperly placed upon appellant the duty to properly transport the car of cantaloupes and to properly ice it while on lines of railroad other than its own after the shipment had been delivered to another carrier.

The objection seems not to have been made to the charges in the trial court, and, for that reason, was waived.

Finding no reversible error, as we view the record, the case is affirmed.

PELPHREY, C. J., did not participate in the decision of this case.

On Motion for Rehearing.

WALTHALL, J. We have again considered every proposition presented in appellant's brief, and feel that what we have said disposes of every proposition that has merit.

As we view the record, appellant has failed to show that the loss of the cantaloupes was due to an inherent infirmity in the cantaloupes themselves, and the appellee has gone forward with his proof to the extent of showing beyond question that the melons when received by appellant at El Paso were in a sufficiently good merchantable condition for the shipment to New Orleans, if moved with reasonable dispatch; that appellant was negligent in not rerouting the shipment to New Orleans as directed, and while the shipment was on its lines; and that as a result of such failure to reroute the shipment a delay of several days in the melons reaching New Orleans was occasioned thereby. The trial court, by a special charge requested by appellant, put the burden of the proof upon appellee to show by a preponderance of the

evidence that the cantaloupes were in good merchantable condition here in El Paso at the time appellee became the owner of them, and at the time and place appellant received them for shipment, and the charge of the court put the burden of the proof upon appellee to show that some negligence of appellant was the proximate cause of the melons becoming unsalable and unmerchantable, and that if appellee had failed to show that the cantaloupes were in good merchantable condition in El Paso, and that their condition was rendered otherwise by some negligence of appellant the verdict would be for appellant. The jury found for appellee. The evidence, we think, is uncontroverted as to the delay in the shipment in reaching New Orleans, the decayed condition of the melons on reaching New Orleans, and caused by appellant, and not another carrier, in failing to reroute the shipment.

We have fully considered, and over objections of appellee, all of the propositions presented by appellant and overrule them.

The motion for rehearing is overruled.